Maybe it's Tow. Mr. Weber, all by yourself. Is it Tow or Tow? Tow. Tow. All right. Your Honor, may it please the Court, I'm William Weber. I'm here representing Alisha Pate and Yvonne Thigpen, which I think, in a case which is a case of first impression, not only in the Fifth Circuit, but I think at least in the Fifth Circuit. Let's put it that way. I want to start by giving a few of the core facts in the case, and those are this. On July 19, 2014, the trustee issued a trustee's final report. I'm going to call it the TFR. I'm Illinois Department of Health Care and Financial Services. I'm going to call them the department from now on. That is an entity that handles child support cases in the state of Illinois, which is where my clients resided. They mailed that TFR to the department, but not to my clients, Ms. Pate and Ms. Thigpen. On August 14, 2014, Ms. Pate got a call from Chastity Clark. This is a case where there's actually five moms who bore children from Daniel Clark, who was the debtor in the case, and Chastity Clark is one of those moms. Ms. Pate got a call, woke up one day, got a call from Chastity Clark informing her that there was a bankruptcy pending on that day and that there was money to be had because there was assets in the estate. Ms. Thigpen also got an email from Ms. Chastity Clark on that same day, August 4, 2014, and a copy of the TFR was attached. Both Ms. Thigpen and Ms. Pate at the trial testified that they had no actual knowledge of the case at all until August 4, 2014. So what happened after that is Ms. Pate went directly to the department and asked for assistance in the bankruptcy case to try and help them. After that, on August 15, the department filed a proof of claim. So there's two main issues in today's case, Your Honor. The first one is agency. And the question there is, was the department the bankruptcy noticing agent for Ms. Pate and Ms. Thigpen on July 19th? That was the date on which the TFR was issued. And we believe, and our position is that the answer is clearly no, that there was no agency relationship at that point. The second question that we're going to ask is, if not, if there was no agency relationship, the 726A1A is the statute in question, and it provides for a 10-day time period to file a proof of claim as a last resort. And basically, it says that you have to file your proof of claim within 10 days of the mailing to creditors of the TFR. So the question is, is if there was no agency relationship between the department and Ms. Pate and Ms. Thigpen, does that 10-day time period run against a creditor to whom the TFR was never mailed and to a creditor who actually had no notice or knowledge of the case at all at the time it was mailed? We would argue, Your Honor, that clearly, constitutionally, they are required to mail it to the TFR, they're required to mail it to all creditors, and that the statute does not run against creditors to whom the TFR was never mailed. But don't we have the question of whether your clients were creditors? No. There's no question there. They're clearly creditors. Their proof of claims were all filed. There's three proofs of claims. There's Ms. Stutz, Ms. Pate, and Ms. Thigpen. They're all DSO claims. Well, but under Illinois law, they didn't have the right to seek payment directly from Clark, did they? Say that again, Your Honor. And by the way, I've got a hearing impediment, so I must confess that. Well, that's fine. Thank you for alerting us to that and continue to do that if you can't hear us completely. So under Illinois law, they didn't have the right to seek payment directly from Clark, but instead that payment went to the state. So isn't there a legitimate question of whether they're creditors? No, Your Honor. I think everybody agrees in this case that they were creditors. I mean, a creditor is a person who has a claim, and they clearly had a claim. Now, there is an issue here as to the agency part of it. The district court relied on two things in ruling that there was an agency relationship between the district court and Ms. Thigpen, and basically those two factors were, one, there was an Illinois statute that makes the department a statutory agent for the purposes of collecting and distributing child support money, but it doesn't displace the ability of the creditor to actually collect it on their own. I mean, but the court did rely on the fact that there is a statute that gives the department the power to collect and distribute child support, but it's not an exclusive ability to do that. You say nobody disputes that your clients are creditors, but I confess I'm unconvinced, and I wonder if you can kind of show me any statutory text in the bankruptcy code that shows your clients are creditors. Your Honor, I've briefed that, but the steps that you go through is there is a definition of creditor in the code, and it defines a creditor as a person with a claim, and then it further defies what a claim is, and I think a claim is very expansive, very broad, any cause of action or claim whatsoever against the person to which the claim is asserted. It makes you a creditor. Again, but in this case, there's probably, we can see that the Illinois Department of Health Care was a dispersing or collecting and dispersing agent. So, again, let's go to the issue as to whether the Illinois Department of Health Care was an agent. We say no. The district court said yes based on the statute that we were just referring to, and also both the bankruptcy court and the district court relied upon the fact that they were an agent because in the past, the moms, Ms. Payton and Ms. Thigpen, had sought help from the department to help them collect child support in the past, and that somehow that gave them an agency relationship with respect to bankruptcy noticing, and we would argue, Your Honor, that both of those conclusions do not create an agency relationship, at least in a bankruptcy context. I mean, you can't take, and let's assume for sake of argument that the Illinois Department of Health Care was an agent in child support issues. That's a long way away from being a bankruptcy noticing agent for purposes of noticing out the fact that a bankruptcy occurred and all the things that happened in the bankruptcy. I mean, it's undisputed that basically both Ms. Payton and Ms. Thigpen were not on the matrix. They never got any notices from the court and knew nothing about that until August 4, 2014, and the bankruptcy court basically said that when they sought help or when they sought help from the department after they learned about the case in August 4, 2014, that that made them an agent. We concede that fact that that would have made Ms. Payton and Ms. Thigpen an agent on August 4, but the crucial facts in this case that determine who wins occurred on July 19th, and the issue is not whether they were an agent on August 4. The issue was whether they were an agent on July 19th when the TFR was mailed out because that's when, if there's an agency relationship, the 10-day time period would start to tick away, and we would argue, Your Honor, that again, they were agents on August 4, but you can't make that retroactive to two weeks or three weeks earlier and say that there was a relationship there, and, Your Honor, one thing that I did not brief or mention in the brief that I want the court to consider in connection with this issue is Ms. Schmidt's testimony. She is the witness that came down to Texas and testified on behalf of the department, and she basically testified that in Chapter 7 cases, and that's what this is, a Chapter 7 case, the department never gives notice to custodial parents of pending Chapter 7 cases, and there's a policy of never acting on behalf of custodial parents in Chapter 7 cases. Now, in this case, an exception was made when Ms. Thigpen went to the department on August 4 and asked for help. They made an exception to that, but I think that's a telling fact as to whether this can be retroactive. You can't make an agency relationship retroactive. You know, you probably have this here, and I've just missed it, or I don't remember it. Why is it they don't give notice? I mean, what's the theory? Why do they not give notice? It's just policy. They don't want to, and our argument is if they've got a policy of never giving notice to or filing proofs of claim to custodial parents in Chapter 7 cases, that they've got a policy of not being an agent. Now, they made an exception in this case because Ms. Payton and Ms. Thigpen went to them on August 4, and they said yes, okay, and then they filed the proof of claim. It was late, depending on how you construe the statute, but we feel that that bolsters our argument that there was no – I mean, an agency relationship is typically a consensual relationship. A common law to have an agency relationship, you have to have a request from a principal in asking for the agent to act on their behalf, and you've got to have consent by the agent to act as an agent. And in this case, we're talking about was the department a bankruptcy-noticing agent, not whether they were an agent with the bankruptcy-noticing agent, which is a far cry away from being an agent for purposes of collecting child support. Why would they be a bankruptcy-noticing agent? That's a person who would – you would send the notices to, and then that person would inform the agency that there was a bankruptcy. And the code provides for that? I don't think the code talks about such things. I was going to say, I have thought. It doesn't discuss that. So we're talking common law of Illinois at this point on that issue, which is pretty uniform across the country. There's no – the basics of what an agency relationship requires, I think, are pretty common across the various states. So for those reasons, we argue that – again, the question is, was mailing the – was mailing the TFR to the health care department on July 19th the equivalent of mailing it to the creditors themselves, Ms. Pate and Ms. Thigpen? We would argue that it was not. Now, that question you just asked, is that the race nova issue that you described when you began? The what issue? You said there was a race nova issue here, a new issue of law that we need to decide. Is that it, or was it something else? No, it's not that. It's that and the interpretation of 726A1A, which is the statute that basically says that you have to file a proof of claim on or before the earlier of A, the date that is 10 days after the mailing of creditors of the summary of the trustee's final report. The issue that is fairly – fairly novel is the issue of this. The bankruptcy court was of the opinion that mailing the TFR to the creditor had no impact whatsoever on whether that 10-day time period ran or not. And they – and the bankruptcy court concluded that the meaning of that statute was for – to establish a discrete time – a discrete time period during which all these time periods get cut off. And we disagree with that. The statute clearly – There's got to be in one of these proceedings a point at which that's it. Correct, Your Honor. That's correct. And the statute provides for that. It says, I only read you A. The statute says A, the claim needs to be filed on or before the earlier of the date that is 10 days after the mailing of the creditors of the summary of the trustee's final report, or the date on which the trustee commences final distribution under this problem with establishing a time for where things are cut off. Because if the trustee typically issues a TFR and gets no response from anybody, it's not like everything is out there in limbo not knowing. It's not like that. The trustee just commences distribution. And if distribution happens, that's it. The time periods are all – the time periods to file proofs of claim are then cut off. It hasn't happened yet in this case, right? Excuse me? It hasn't happened yet. I mean, they haven't made payments. Is there anything – No, no, no. In this case, the district court, although he ruled against me twice, he was sympathetic because he granted two stays. I asked him for a stay of distribution, and he granted that, both before the case was submitted to him and after he issued his opinion in the case. So no, no distribution has been made in this case, and it's still open to discussion. But we feel that because of that, that the 10-day rule is what's critical here in calling who gets the funds. Your Honor, now let's move back to the – again, we concede that if we lose on the agency issue, that ends the case. That ends discussion because there's no need to go on to the second issue. And the second issue is, is that POC filing deadline intended as a discrete point in time? And then the judge – the bankruptcy court also said it was not founded in due process. I confess I don't know what he means by that, because all statutes in my mind have to comply with due process. So when he says it's not founded in due process, I don't know what that means. But – so it's either was it meant as a discrete point in time, making – whether the act – the TFR was actually mailed to all creditors, making that irrelevant, which I think is preposterous – and that's how the bankruptcy court ruled – or is it triggered only against creditors to whom the TFR is mailed? And we would say that it's the latter, and we argue the court to adopt that theory, because for several reasons. First of all, the plain meaning of the statute seems to compel that the TFR must be mailed to all creditors. The bankruptcy rule clearly says that it has to be mailed to all creditors. And the way the statute reads is that it's – the claim must be filed within 10 days after the mailing to creditors of the summary of the final report. So how can you bind a creditor that has actually no knowledge of the existence of the case and no knowledge of the deadline on which they must file a proof of claim? How can you bind them to a rule when they don't even have notice? It just seems absurd, Your Honor. And this is a case where we've got three DSO creditors claiming. My clients are two out of the three. And we just feel the results would be rather absurd to give two – one person, one DSO creditor all the funds in this estate, and then deny the two creditors who had actually no formal – no notice of the existence of the case. And they clearly – now, there is an issue as to Ms. Pate – Ms. Pate, by the way, as to whether she had knowledge of the case. And so we may have a problem with her. We don't have a problem with Ms. Stigpin. That's clear and obvious. But it is clear that even though Ms. Pate – and we say that because in June of 2013, the debtor's attorney amended Schedule C and E, and he reflected the proper address for Ms. Pate on that and issued a certificate of service saying that he mailed that out. So she may not be considered a person without actual knowledge of the case because of that. However, we feel that there's another fact related to that, and Ms. Pate – am I out of time, Your Honor? Please go ahead and finish your sentence. You can go ahead. Let me just ask one other thing. There's another thing, Your Honor, that I missed in the brief. And I'd like the court to consider this case because this is authority, direct authority, on the issue that we're talking here. And it was actually cited by the bankruptcy court in their opinion. The case is U.S.V. Cardinal Marine Supply, Inc., 916-Fed-2nd-1087, and it was issued out of the Fifth Circuit. And it basically says, whereas here the reason for filing of a priority claim is the failure to give creditor notice, it should be treated the same as timely filed priority claims entitled to distribution under Section 726A. So this is the closest authority I can find on this point, and it directly supports our argument that if you file a late-filed claim and it's late-filed because you had no notice and no knowledge of the case, which is what happened in this case, then you should get equal distribution under 726A with other 726A creditors. Can I ask you a question on my time and the court's time? Yes, ma'am. Why is it nobody but you is here? Why did nobody... Why is no one else here? Your Honor, what happened, this question came up several times, and Julie Koenig is the attorney for Mr. Tao, and the answer we got several times, both at the appeal stage in the district court and the appeal stage here, was that the U.S. trustee basically insisted that the trustees step down and not participate in either of these cases. Why? I can only speculate. I can speculate, and I'll tell you my thought on it if you're interested, but I don't really have anything to support this. This is – she couldn't tell us anything other than they were told by the U.S. office not to appear. Okay. Got it. Thank you. All right. Thank you, Mr. Weber. Your case is under submission. Last case for today, WMV.